IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02003-REB-MEH

DWAYNE TAYLOR,

    Applicant,

v.

GARY WATKINS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## RECOMMENDATION FOR DISMISSAL

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Applicant's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket #2]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R 72.1.C, this matter has been referred to this Court for recommendation. For the reasons set forth below, the Court recommends that the Application be **denied**.

**I.    Facts**

Applicant Dwayne Taylor was convicted by a jury in Douglas County District Court on charges of enticement and sexual assault on a child and was sentenced to an indeterminate term of four years to life in prison. According to the record in this case, Taylor and his co-defendant Maurice Rogers were selling magazine subscriptions door-to-door in the victims' neighborhood. Taylor was twenty years old at the time, and Rogers was twenty-two years old. Rogers knocked on the door of the home of victim O.H. and was informed that her mother was not home. While Taylor and Rogers continued to sell magazine subscriptions in that neighborhood, O.H. and her friend, T.S., went out on the porch

of O.H.'s home. O.H. was twelve years old at the time, and T.S. was thirteen years old. Rogers and Taylor then approached O.H. and T.S. and engaged in flirtatious conversation.

At some point, all four entered O.H's home and continued talking in the living room. Rogers and O.H. went into the kitchen, and T.S. later entered the kitchen and found them kissing. Rogers and O.H. then went upstairs to O.H.'s bedroom. Taylor and T.S. later went upstairs to check on them and saw them engaging in sexual contact. Taylor sat down in a chair on the bedroom and had T.S. sit on his lap. When T.S. indicated that she did not want to watch Rogers and O.H., Taylor took her into O.H's closet. T.S. stated that she thought that they went in the closet to "make out." Testimony differed as to what transpired in the closet.

Taylor appealed his conviction to the Colorado Court of Appeals, which affirmed his conviction. The Colorado Supreme Court denied Taylor's Writ of Certiorari, and Taylor timely filed the instant Writ of Habeas. Taylor presents the following three claims for relief, which he alleges rendered his trial fundamentally unfair: (1) Taylor's rights to due process and a fair trial were violated by the trial court admitting evidence of the co-defendant's separate sexual assault of a different child victim and the co-defendant's guilty plea in connection with that offense; (2) the trial court erred in admitting under C.RS. § 13-25-149 the hearsay statements of the victim in the co-defendant's case; and (3) the trial court's failure to provide the jury with adequate limiting instructions violated Mr. Taylor's right to a fair trial. Application at pp. 8, 19, 21.

**II.     Discussion**

    **A.     Standard of Review**

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the [applicant's] custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals which was the final substantive proceedings in the state appellate review process.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *See Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999); *Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999). Under AEDPA, an applicant is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court recently stated:

A state-court decision is contrary to . . . clearly established precedents if it applies a

>rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 125 S.Ct. 1432, 1438-39 (2005) (internal citations omitted).

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). So, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the reviewing court may presume an adjudication on the merits and apply AEDPA deference. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Factual findings made by the state trial and appellate courts are presumed correct, with the applicant having the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003). "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* and *O'Neal v. McAninch*, 513 U.S. 432 (1995), must be applied. *See Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002). Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. *O'Neal* addresses the situation where a

court is in "grave doubt" about the likely effect of the error on the jury's verdict – that is, where "the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.  In such a case, *O'Neal* instructs a court to treat the error "as if it had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Brecht*, 507 U.S. at 623).

### B.     Petitioner's Claims

#### 1.     Evidence of the Co-Defendant's sexual assault of another victim at the same time

At Taylor's trial, the court allowed evidence of Roger's assault on O.H. as part of the *res gestae* of the crime but required a limiting instruction.  Specifically, the trial court allowed evidence of Roger's guilty plea and DNA evidence found inside O.H.  Taylor argues that such admission violated his right to due process by inviting the jury to find him guilty by association with Rogers, even though the testimony and allegations regarding the contact between Taylor and T.S. differed substantially from the allegations against Rogers.  Conversely, the State argues, and the Court of Appeals held, that the crimes were inextricably linked.

Although citing to state case law authority, the Colorado Court of Appeals applied the standard  recognized by the United States Supreme Court and did not apply a legal standard "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to the correct legal standard, *Williams v. Taylor*, 529 U.S. 362, 406-07 (2000).  Because the Colorado Court of Appeals applied the same basic substantive test in its analysis that this Court would apply to determine whether the crimes were inextricably linked, deferral to its ruling is warranted unless it "unreasonably appli[ed]" that test.  28 U.S.C. § 2254(d); *see Harris*, 411 F.3d at 1196.

Evidence is properly admitted as *res gestea* if the acts are "so closely connected with the principal occurrence as to form in realty a part of the occurrence." *Martin v. McKune*, No. 02-3145, 2002 U.S. Dist. LEXIS 24127 (D. Kan. Dec. 12, 2002). Here, the Colorado Court of Appeals' found that the prosecution's case against Taylor properly included the circumstances surrounding the allegations against him and the context in which his conduct arose. Record, Exh. C, p. 4. Rogers' conduct with O.H. immediately preceded Taylor's conduct with T.S. and continued during Taylor's contact with T.S. In addition, T.S. witnessed the sexual contact between Rogers and her friend before she was led into the closet by Taylor. T.S. also changed her story after the incident, but her trial testimony was corroborated by evidence of the conduct between Rogers and O.H. Thus, the Court of Appeals reasonably found that the events of Rogers' conduct were closely connected to the events of Taylor's conduct.

Moreover, the Court of Appeals pointed out that the evidence of these events was accompanied by a limiting instruction for the jury to understand that Taylor was not being charged with any contact with O.H., but the evidence supported the prosecution's burden of proof regarding Taylor's intent for leading T.S. into the closet after watching Rogers and O.H. engage in sexual contact. Accordingly, this Court finds that the Court of Appeal's conclusion that the evidence was properly admitted for context is not unreasonable. *See Welch v. Sirmons*, 451 F.3d 675, 688 (10th Cir. 2006) (holding that evidence of a previous murder was rightfully admitted for a limited purpose in part because of a proper limiting instruction).

### 2. Hearsay statements of the victim in the Co-Defendant's case

Taylor objects to the trial court's admission of the out-of-court, video-taped statement of O.H. because he argues that these statements are inadmissible hearsay and do not meet the exceptions

required under C.R.S. § 13-25-149. In this regard, Taylor's argument is premised solely on an interpretation of state law, namely the Colorado Rules of Evidence, which the Colorado Court of Appeals found to be correct. The United States Supreme Court "has stated many times that 'federal habeas corpus relief does not lie for errors of state law' . . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Hence, this Court cannot review whether the Court of Appeals determination of state law was correct. Rather, in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted).

Taylor's only constitutional argument on this claim is that this error violated his right to due process and right to a fair trial. The evidence admitted did not violate Taylor's right to a fair trial because O.H. also testified at trial, and Taylor was presented with the opportunity to cross-examine her. *Eg.*, *United States v. Owens*, 484 U.S. 554, 558 (1988) (finding admission of out-of-court statements did not violate the Confrontation Clause when defendant was able to cross-examine the witness at trial). Thus, the Court of Appeals' conclusion is reasonable in light of Supreme Court precedent, and under these circumstances, the alleged violation of state law does not reach the threshold of a constitutional violation.

### 3. Adequacy of the Trial Court's limiting jury instructions

Finally, Taylor alleges that the trial court's limiting instruction concerning the evidence related to Rogers' crime and Rogers' victim was insufficient. At trial, the court read the following jury instruction:

> You have heard evidence concerning the sexual assault committed by Maurice Rogers on [O.H.] Mr. Rogers was charged, pleaded guilty and sentenced for his sexual assault.

> As outlined earlier to you, Mr. Taylor is charged only with offenses involving [T.S.] and not [O.H.]  The evidence offered concerning the conduct between Maurice Rogers and [O.H.] was admitted only for the purpose of explaining all of the circumstances of the April 19, 2001 incident and placing these events in context.

Response, Exh. A at p. 16.  Taylor argues that this instruction is insufficient because it did not also clearly prohibit the jury from using such evidence for any other purpose.  Application at p. 23.

On its face, this instruction limits the jury's use of the evidence by stating that the evidence was admitted "*only* for the purpose of explaining all of the circumstances of the April 19, 2001 incident and placing these events in context."  As the Supreme Court has concluded, "the question is reduced to whether, in light of the competing values at stake, we may rely on the 'crucial assumption' that the jurors followed 'the instructions given them by the trial judge."  *Tennessee v. Street*, 471 U.S. 409, 415 (1985) (citations omitted).

The competing values presented are Taylor's right to not be found guilty for the acts of Rogers and the State's right to place Taylor's conduct in the context of other simultaneous criminal conduct.  The Court of Appeals held that the jury instruction given by the trial court rightfully limits the evidence of Roger's crime to the context, the proper purpose of the evidence.  Record, Exh. C, p. 7.  The Court of Appeals further found that repeated statements by the trial court and both counsel explaining that Taylor was charged only with offenses involving T.S. cured any potential deficiencies in the jury instruction.  *Id.* at 8.  With these repeated statements, this court must assume that the jurors followed these instructions.  *E.g.*, *Street*, 471 U.S. at 417 (holding that a co-defendant's confession was properly admitted as rebuttal testimony and that the limiting instruction was adequate and was assumed to have been followed).  The Court of Appeals conclusions, therefore, constitutes a reasonable interpretation of Supreme Court precedent.

### III.    Conclusion

Accordingly, for the reasons stated above, the Court RECOMMENDS that the Application for a Writ of Habeas Pursuant to 28 U.S.C. § 2254 [Filed October 13, 2005; Docket #2] be **denied**, and that this case be dismissed with prejudice.  Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[1]

Dated at Denver, Colorado this 15th day of December, 2006.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[1] The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).